**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JUN 2 3 2025

MITCHELL R. ELFERS
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CRIMINAL NO. 25-2209 MLG |
| Plaintiff, ) | |
| ) | 18 U.S.C. § 1951(a): Conspiracy to |
| vs. ) | Commit Interference with Commerce by |
| ) | Extortion Under Color of Official Right. |
| **LOUIS A. HENCKEL III**, ) | |
| ) | |
| Defendant. ) | |

INFORMATION

The United States Attorney charges:

Introduction

At all times relevant to this Information:

New Mexico Driving While Intoxicated (DWI) Laws

1.      New Mexico has a series of state laws designed to target the unlawful driving of vehicles while under the influence of alcohol or drugs. *See* New Mexico Statutes Annotated (NMSA) 1978, § 66-8-101, *et seq.* (2016). Under New Mexico state law, a person has committed DWI if they operated a vehicle while impaired to the slightest degree, *see* NMSA 1978, § 66-8-102(A) (2016), or with a blood alcohol concentration (BAC) greater than .08, *see* NMSA 1978, § 66-8-102(C). A person has committed aggravated DWI if (1) their BAC is .16 or greater, (2) they caused injury as a result of their unlawful operation of a motor vehicle, or (3) they refused to submit to blood or breath testing. *See* NMSA 1978, §§ 66-8-102(D), 66-8-107(A). (Collectively, these are referred to as DWI Offenders.)

2.      DWI offenses that do not involve injury or death to another are generally misdemeanors, unless the offender has at least three prior DWI convictions (resulting in the next

DWI arrest being a state felony). *See* NMSA 1978 at § 66-8-102(F)-(K). The range of imprisonment depends on an offender's prior DWI conviction history, but all DWI convictions require payment of associated court fees in addition to potential fines. Additionally, if a person is convicted of DWI, they must have an ignition interlock installed in their vehicle (or in any vehicle driven by them).

3. To initiate a state court misdemeanor DWI offense, the arresting officer either files a criminal complaint immediately following the arrest and takes the offender into custody, *see* New Mexico State Court Rules (NMRA) 7-201, or later files a criminal complaint but seeks a summons from the state court, *see id.*, *see also* NMRA 7-204. If the DWI Offender is hospitalized or otherwise unable to be taken into custody immediately following the DWI incident, the officer may later file the criminal complaint and seek a summons from the court.

4. Prior to March 2022, once the New Mexico state criminal DWI charges were initiated, all parties, including a defendant, were entitled to conduct a pretrial interview (PTI) of all witnesses, including law enforcement officers. *See* NMRA 7-504(1). To arrange the PTI, the parties were required to confer and agree in good faith to arrange a date and location for the PTI. If that was unsuccessful, defense counsel could seek a subpoena from the state court for a PTI. Typically, the initial PTI would be arranged at the law enforcement office and, if the officer did not attend, defense counsel could request a subpoena for the PTI at another location, including the defense attorney's law firm. On March 24, 2022, the New Mexico State Supreme Court entered an order temporarily suspending all PTIs in cases occurring in the Bernalillo County Metropolitan Court, which included all misdemeanor DWI arrests in Bernalillo County. *See* New Mexico Supreme Court Order NO. 22-8500-016. Because of this, since March 2022, there have not been PTIs for misdemeanor DWI cases that occur in Bernalillo County.

## New Mexico Motor Vehicle Division (MVD) Administrative Proceedings

5. For DWI Offenders with New Mexico driver's licenses, in addition to the criminal case, there is a separate administrative process handled by the New Mexico MVD to determine if the DWI Offender's driver's license should be revoked (the "MVD hearing"). *See* NMSA 1978, § 66-8-111. Under New Mexico state law, the officer must immediately provide the DWI Offender written notice of revocation of the DWI Offender's driver's license and of the right to an administrative hearing. *See id.* at § 66-8-111.1(A). This written notice serves as the offender's temporary license for twenty days or, if the DWI Offender requests an administrative hearing, until after the order is entered following that hearing. *See id.* at § 66-8-111.1(B). If the DWI Offender requests a hearing, an administrative hearing is held, at which the officer must appear and provide testimony that there were "reasonable grounds to believe that the person had been driving a motor vehicle within this state while under the influence of intoxicating liquor or drugs", the DWI Offender was arrested, and the results of the blood or breath test (or refusal). *See id.* at § 66-8-112(F). If the officer does so, the MVD then suspends the DWI Offender's driver's license.

## New Mexico DWI Law Enforcement

6. Multiple policing agencies share in the enforcement of DWI laws within and around the Albuquerque area including, but not limited to, the Albuquerque Police Department (APD), the New Mexico State Police (NMSP), and the Bernalillo County Sheriff's Office (BCSO). Each agency has its own internal guidelines related to officer and deputy conduct and behavior.

7. APD has a Personnel Code of Conduct that requires all officers to "act in a manner that is above reproach. This includes avoiding behavior that may cast doubt on their integrity, honesty, moral judgment, or character; that tends to bring discredit to the Department;

3

or that impairs the Department's efficient and effective operation." APD Standard Operating Procedure 1-1-6(A)(1).

### The Defendant

8. At all times material to this Information, defendant **LOUIS A. HENCKEL III** was a sworn law enforcement officer with APD. **HENCKEL** joined APD and became a sworn law enforcement officer in 2008. **HENCKEL** worked in the DWI unit from February 2017 until July 2019, when he promoted to sergeant. After he left the DWI unit, **HENCKEL** continued to be responsible for the DWI cases still pending at the time he transferred to sergeant. **HENCKEL** was terminated by APD on April 9, 2021, for reasons unrelated to the criminal DWI scheme.

### Conspiracy to Interfere with Commerce by Extortion Under Color of Official Right

9. The allegations set forth in paragraphs 1 through 8 of this Information are realleged and incorporated herein by reference.

10. From on or about January 2020, through on or about July 2, 2020, in Bernalillo County, in the District of New Mexico, the defendant, **LOUIS A. HENCKEL III**, unlawfully, knowingly, and intentionally combined, conspired, confederated, agreed, and acted interdependently with other persons to commit an offense defined in 18 U.S.C. § 1951(a), specifically interference with commerce by extortion under color of official right.

### The Object of the Conspiracy

11. The object of the conspiracy was for **HENCKEL** and other sworn law enforcement officers (the "Conspiring Officers") to agree to act, or to fail to act, to ensure DWI Offenders that they arrested for DWI and who retained THOMAS CLEAR III avoided criminal and administrative remedies related to their DWI arrests in exchange for items of value provided by CLEAR in coordination with RICARDO MENDEZ.

Manner and Means of the Extortion Conspiracy

12.     The object of the conspiracy was accomplished as follows:

a.      CLEAR, a lawyer, owned a criminal defense law firm located in Albuquerque, New Mexico, that specialized in DWI defense. CLEAR appeared at the criminal and administrative settings for cases that were part of the scheme and moved to dismiss the proceedings based on the Conspiring Officers' intentional failures to appear at required settings.

b.      MENDEZ worked for CLEAR's law firm as an investigator and handled the day-to-day coordination of the scheme.

c.      **HENCKEL** was a Conspiring Officer and participated in the extortion conspiracy by agreeing to intentionally fail to appear at required criminal settings associated with the DWI-related arrest knowing that his non-appearance would allow CLEAR to move to dismiss the proceedings.

d.      To execute the scheme, CLEAR and MENDEZ would coordinate the scheduling of the criminal settings for DWI Offenders who retained CLEAR to ensure that the Conspiring Officers, including **HENCKEL**, would be able to miss the required settings, which, in turn, allowed CLEAR to use the Conspiring Officer's failure to appear as a basis to request dismissal of the proceeding (even though CLEAR was aware that the Conspiring Officer had been paid by CLEAR and MENDEZ to not appear). Because the Conspiring Officer was a necessary witness and did not appear as required, the criminal case would be dismissed. Because the state criminal charges were dismissed, the fines, fees, and interlock requirement that would otherwise have applied to the DWI conviction were not imposed.

e.      In exchange for missing the required court settings, CLEAR and MENDEZ would pay the Conspiring Officers, including **HENCKEL**. Often the payment was in

cash, but, at times, also received other benefits and things of value, including but not limited to free legal services, gift cards, hotel rooms, and other gifts.

   f. At times, MENDEZ communicated to Conspiring Officers, including **HENCKEL**, when a DWI Offender was related to or had a personal connection with another Conspiring Officer to help facilitate the arresting Conspiring Officer to not appear at the required settings, thereby securing dismissal of the case. MENDEZ would also pay the arresting Conspiring Officer, including **HENCKEL**, to ensure that the arresting Conspiring Officer would not attend the required settings. On at least one occasion, MENDEZ collected the money from the Conspiring Officer with the personal connection to the DWI Offender to pay **HENCKEL,** the arresting Conspiring Officer, in exchange for **HENCKEL** not attending the required court settings on the DWI Offender's case, thereby guaranteeing the dismissal of the case.

   g. Co-conspirators' conduct in perpetuating the conspiracy affected commerce.

   h. Co-conspirators frequently used coded language in their communications to avoid detection and criminal prosecution.

In violation of 18 U.S.C. § 1951(a)

> RYAN ELLISON
> United States Attorney
>
> _/s/ signed_
> SHANA B. LONG
> KATHERINE L. LEWIS
> Assistant United States Attorneys
> 201 Third Street, Suite 900
> Albuquerque, New Mexico 87103
> (505) 346-7274